RICHARD-LIGHTMAN THEATRE CORPORATION *v.* VICK.

4-6302                                              147 S. W. 2d 731

Opinion delivered February 17, 1941.

*Ned Stewart* and *Paul Jones, Jr.,* for appellant.

*James H. Pilkinton* and *C. Van Hayes,* for appellee.

McHANEY, J.   Appellant owns and operates a motion picture theatre in the city of Hope.   Appellee brought this action against it to recover damages for

personal injuries she alleges she sustained from a fall in leaving the balcony of the theatre, during a performance she attended as a patron on November 19, 1939. The negligence laid and relied on is that appellant failed to have the balcony of its theatre properly lighted. The answer was a general denial, pleas of her own negligence as the sole cause of her injuries, if any, assumption of risk and unavoidable accident.

Trial resulted in a verdict and judgment for $700 against appellant, and this appeal followed.

It is appellant's contention that the court erred in refusing to direct a verdict for it on its request so to do. We agree with this contention, on the ground there is no substantial evidence to support the verdict and judgment.

There is no contention that the balcony of the theatre was improperly or negligently constructed, but only that it was improperly lighted. Appellee, a resident of Atlanta, Texas, but then employed as a waitress in a cafe in Hope, was accompanied to the theatre by her friend, Mrs. Mitchell, also of Atlanta, Texas, a temporary visitor in Hope, and they are the only witnesses in the case who profess to know anything about the accident. Mrs. Mitchell bought two tickets for the balcony at about 3:15 p. m. They entered the balcony, the aisle of which runs up and down and the seats crosswise. The seats are elevated from the front to the rear and the aisle has steps leading up to the back row of seats, and to the projection room which is just behind the back row of seats. They selected the end seats on the back row because they wished to avoid crawling over others on the lower seats. Evidently it was light enough when they entered, not only for them to find these vacant seats on the aisle end of the back row, but to see that the other end seats were occupied. The undisputed evidence is that the theatre balcony was equipped with twelve shaded bracket wall lights and eight or more owl or aisle lights attached to the seats along the aisle near the floor. In addition one or more large chandeliers hang in the center of the building and there are ten windows in the back of the balcony, through which natural daylight pene-

trates, thereby letting some light enter the balcony, and all over the ceiling of the theatre. An attempt was made to prove that all these wall bracket lights and the aisle lights were not burning. On this question appellee testified that she knew a picture must be shown in semi-darkness; that it is usually dark when you go in off the street, but in a few minutes one becomes accustomed to the dark condition. "We went up feeling our way. We didn't sit in the front seats because they were crowded, the end seats, and we didn't want to fall over anyone and she led the way up to the top seat." She said: "It was very dark and we felt our way." She was asked and answered questions on cross-examination as follows: "Q. Were there any lights in the balcony? A. I never noticed when we went in. Q. Did you see the lights on the wall on both sides? A. I never noticed those. Q. You don't know and you tell the jury you don't know whether there were any lights in the aisle or not? A. No, I don't— Q. And you never noticed whether there were any lights at all in the balcony? A. No." She said she was sitting on the seat next to the aisle and did not notice whether there were any lights there or not. Mrs. Mitchell, appellee's companion and witness, testified on direct examination that there were no lights burning in the balcony on the afternoon of the accident, although she said there were light facilities on the walls and on the seats in the aisle. On cross-examination, however, when asked if the wall lights were on, she answered: "Not as I know of. I did not look." When asked what caused appellee to fall, she said: "The best of my knowledge, it was the step-off—that's all I can say."

Now, the undisputed testimony of Young, the manager of the theatre, is that the aisle lights were burning at 12:30 or 1:00 p. m. when he inspected the balcony and again during the afternoon. Allen, the projectionist, who operated the picture machine said the owl lights were burning at 1:45 p. m. when the show started and at 5:30 or 6:00 p. m. when it was over. Mrs. Mitchell says they were not burning when she arrived at 3:15 and when she left during the second performance. We

think this evidence insufficient to bring home notice, either actual or constructive, to appellant that the aisle lights were out. It was sufficient to make a jury question as to whether the lights along the aisle were burning during the time appellee was in the show, but such evidence was not sufficient to raise an issue of negligence for submission to the jury. The mere fact that the aisle lights were out temporarily does not establish negligence. It is undisputed that light-fixtures were on the walls and in the aisle, and that they were burning shortly before appellee arrived and shortly after she left. To justify a finding of negligence due to the absence of burning lights, the proof must show actual knowledge on the part of appellant, or that such condition existed for such a length of time that it should have known of it, and there is no such proof in this case, but to the contrary.

Interesting cases on the liability of moving picture theatre owners for injuries to patrons caused by alleged insufficient light are cited in the briefs. *Osborne* v. *Loewe's Houston Co.* (Tex. Civ. App.), 120 S. W. 2d 947; *Peck* v. *Yale Amusement Co.* (Mo. Sup.), 195 S. W. 1033; *Falk* v. *Stanley Fabian Corporation*, 115 N. J. L. 141, 178 Atl. 740; *Magruder* v. *Columbia Amusement Co.*, 218 Ky. 761, 292 S. W. 341. We think it unnecessary to quote from or comment on these cases further than to say that all, except the last, is against the appellee.

We think the principle many times stated, but recently reannounced in *Kroger Gro. & Baking Co.* v. *Dempsey, ante,* p. 71, 143 S. W. 2d 564, is controlling here, and that is that before appellant can be held for failure of the aisle lights to be burning when appellee left the theatre, she must show actual knowledge of appellant of such condition or that the condition existed for such a length of time as that knowledge will be presumed. Neither of which is shown. Appellee refused to testify that the lights, both on the wall and in the aisle, were not burning, and her witness when pressed about the wall lights, as to whether they were on, answered: "Not as I know of. I did not look."

The court, therefore, erred in refusing to direct a verdict for appellant. The judgment will be reversed, and, as the cause appears to have been fully developed, it will be dismissed.